Mr. Justice James
delivered the opinion of the court:
*557 This is a bill to restrain the Secretary of the Interior and the Commissioner of the General Rand Office from molesting the complainants right of way through certain lands of the United States granted to it under the Act of March 3, 1875, 18 Stat., 482.
The first section of that act provides: “That the right of way through the public lands of the United States is hereby granted to any railroad compaiw duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secreta^ of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of the said road; also the right to take from lands adjacent to the line of said road material,, earth, stone and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.” '
The fourth section provides: “ That an3^ railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which the right of way. shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to an}r such uncompleted section of said road.”
The bill states substantially the following case, as showing *558 compliance with these requirements and the vesting in complainant’Of a right of way. .
The code of the Territory of Washington, adopted in 1881, provided the manner in which companies for the purpose of building and running railroads, should be incorporated and organized. In 1883 certain persons organized, in accordance with these provisions, a company called “The Union River Dogging Railroad Company,” whose business and objects, as stated in the articles, were to be “ the building, running, etc., of a railroad for the transportation of saw logs, piles and other timber and wood and lumber,' and to charge and receive compensation and tolls therefore.” The route of this road from tide water in Uynch’s Cove, at the head of Hood’s Canal, to a point at or near the northeast corner of township 24, north of range 1 east, of the Williamette meridian. The company proceeded to construct and equip a railroad extending some four miles from Uynch’s Cove, and to transport over it saw logs and other timber.
On the 29th of December, 1885, certain other persons purchased from its then stockholders, the whole of the capital stock of the company and took control of its franchises, property and business. Afterwards, on the 17th of August, 1888, these new stockholders, in pursuance of authority granted by the Act of 1881, filed supplemental articles of incorporation as follows :
“First. To construct and equip a railroad and telegraph line from a convenient point on tidewater on Uynch’s Cove, at the head of Hood’s Canal, in Mason County, Washington Territory, and running thence in a general northeasterly direction by the most practicable route to a convenient point on tidewater on Dye’s Inlet, in the county of Kitsap, in said Territory; and also a branch from said line, at some convenient point thereon, between Uynch’s Cove and Dye’s Inlet, and running thence in a general northerly direction, by the most practicable route to or near the town of Seabeck on Hood’s Canal, in said county of Kitsap; and also a branch from some convenient point on the line of said road between said Uynch’s Cove and Dye’s Inlet, and running in a general *559 northeasterly direction, by the most practicable route to tidewater at, or near Port Orehand, in said county of Kitsap; and also to construct and equip such other branches to said railroad and telegraph line as may be necessary for the proper and profitable management or extension of the business of the said corporation.
“Second. To maintain and operate said railroad and branches, and carry freight and passengers thereon and receive tolls therefore.”
In the autumn of 1888, after the filing of these supplementary articles of incorporation, complainant’s attention was called to the fact that the Act of Congress above referred to .required that any railroad company which should propose to avail itself of the right of way and other privileges granted by that act, should previously file with the Secretary of the Interior a copy of its articles of incorporation, together with due proofs of its organization. Thereupon, on the 5th of January, 1889, it filed with the register of the land office at Seattle, the following papers, duly certified and sworn to; namely, a copy of its articles of incorporation; a copy of the territorial law under which the company was organized; a certificate of the Secretary of the Territory that the articles of incorporation had been so filed in his office, with the date thereof; and official certificate by the secretary of the company, of its organization and of the copy of the articles filed with the Secretary of the Interior; a true list of the names and designations of its officers at that date, and a map showing the termini of the road, its length, and its route over the public lands, according to the public surveys. This was done in accordance with the directions of a circular for that purpose, issued by the Secretary of the Interior, on the 7th of November, 1879.
On the 10th of January; 1889, the register at Seattle, transmitted these papers to the Commissioner of the General hand Office, and he in turn, on the 28th of the same month, transmitted them to the Secretary of the Interior, at the same time approving them and recommending that they be received and placed on file. On the 29th of the same month they were *560 approved in writing by the Secretary of the interior — at that time William F. Vilas, Fsq. — and were ordered to be filed. They were accordingly so filed, and the complainant was notified thereof.
Afterwards, in the spring of the year, the complainant constructed its line for three miles beyond the point to which it had previously extended, located at intervals a better line of road, made and ballasted a new road bed of standard gauge, and substituted steel rails and another locomotive for the rails and equipments which had sufficed for the limited purposes specified in its original articles of incorporation.
On the 13th of June, 1890 a copy of an order by John W. Noble, Esq., Secretary of the Interior, was served upon the complainant, directing it to show cause why the above' ‘approval of its articles of incorporation and maps of definite location should not be revoked and annulled.” Thereupon the complainant, protesting at the' same time thát such revocation and annulment was beyond the power of the Secretary, did show cause as directed; but, nevertheless on the 2d of June, 1889, George Chandler, Esq., then the acting Secretary of the Interior, made the rule to show cause absolute, and ordered “that the approval of the Secretary of the Interior, dated the 29th of January, 1889, of the maps of definite location or profile of the Union River Togging Railroad Company be, and the same is hereby annulled, cancelled, set aside, and held for naught,” and directed the Commissioner of the General Tand Office ‘ ‘to carry out this order by causing it to be entered upon the appropriate plats and records of his office and the proper local land office.”
The bill avers that the defendants are about to carry out this order, and prays that it may itself be declared void, and that the defendants may be enjoined not to molest the plaintiff’s enjoyment of the^ right of waj^ and of the privileges secured to it by the approval and order of 29th January, 1889.
The joint answer of the defendants admits the truth of the allegations above set forth in substance, and then proceeds as follows:
*561 1 ‘As to the remaining paragraphs of the bill, these respondents say that it became known to them that the complainant company was not engaged in the business of a common carrier of passengers and freight at the time of its application for admission to the privileges of the Act of Congress of March 3, 1875, Chap. 152, but that it was engaged at the time in the transportation of logs for the private use and benefit of the several persons composing the said company; and thereupon your respondent, John W. Noble, Secretary of the Interior, being advised that a railroad company carrying on a merely private business was not such a railroad company as is contemplated by the said Act of Congress, deemed it his duty to take proper steps to vacate and annul the action of the Honorable W. F. Vilas, Secretary of the Interior, of January 29, 1889, approving the application of the complainant company under the said Act of Congress, and maps of definite location accompanying the same; and to that end this respondent caused notice to be given to the complainant company to show cause why the said action of the Secretary of the Interior should not be vacated and annulled.”
Secretary Noble states that he had approved the order of Acting Secretary Chandler annulling the action of Secretary Vilas, and had directed the Commissioner to carry into effect such annulling order. He further states that he was advised that he had the right to revoke the action of his predecessor as having been done improvidently and on false suggestions, and without authority under the said statute.
It further appears by the answer that an application for a rehearing had been filed with it and is now pending and undecided.
Some statements or rather suggestions of facts were made at the argument to which we have not thought it . proper to allude. As this case was submitted on the bill and answer and accompanying exhibits we know only what is there shown; and it is because the facts appear only in this way that we have stated the contents of the pleadings at such length. The question to be considered by us is, whether the facts thus shown entitle the complainant to an injunction.
*562 In that inquiry the particular questions are: First, what matters were to be considered by the Secretary of the Interior when the complainant submitted its application for a right of way; second, what was the effect of his action in approving that application; third, what was the power of his successor if the latter should be of opinion that the original approval had been made improvidently or upon false suggestions or representations ?
In the first place, the Act of March 3, 1875, in granting right of way through the public lands, used the word “railroads” in its ordinary sense. It was intended to apply only to roads which serve a public use; in other words, to common carrier roads. Whenever an application for the necessary approval of its map of location is made by a company already carrying on business the very first duty which the statute imposes on the Secretary of the Interior is that he shall ascertain whether the applicant is a railroad company within the meaning of the act; that is, whether its road is for public or only for private use. Indeed the respondent’s own attitude is that such an inquiry is part of the Secretary’s business: He himself is asserting that the Secretary of the Interior is competent to ascertain, and is charged to ascertain, whether an applicant was, at the time of its application, in good faith a railroad within the meaning of the statute. 'The very assertion of power relating to that matter which respondent now makes, is a contention that this is an inquiry which it is the duty of a Secretary of the Interior to institute, and that is a concession that Secretary Vilas had the same power and was charged with the same duty. It is not, however, to any atgumentum ad hominem, that we give weight. The statute plainly made it the duty of Secretary Vilas, to ascertain the validity of complainant’s pretentions, and whether it was competent to acquire rights under the statute.
What effect did the statute intend to give to this inquiry and ascertainment? Was it intended that there should be no time at which executive action should become conclusive? The applicant is invited and authorized by the statute to proceed at once with the construction of its road *563 on obtaining approval of its location. When such steps are actually taken in consequence of such approval it would seem to be the intention of the legislature that, so far as executive inquiry is concerned, the Secretary’s approval shall stand as a decision. It is not conceivable that the same law which authorizes a railroad company to build its road on obtaining the Secretary’s approval of its location, should contemplate further inquiry by him into its right to do so after it has built its road. We conceive, then that the function of executive inquiry under this statute ceases when a. railroad company has obtained approval of its location of route and has upon that authority expended moneys in building its road. The executive determination of its status and qualification to be a grantee of right of way stands then as an authorized executive decision-, a decision which is conclusive against executive interference.
Next, what is the nature of the right acquired by a railroad company?
We observed at the argument that counsel for the respondent characterized it as a “ privilege, ” as if it were some kind of sufferance or revocable gratuity, and thus differed essentially from a property right. It is enough, perhaps, 'that the statute calls it a “right of way.” In the absence of any indication of a different meaning, we perceive no reason to suppose that these words have less than their usual force. A right of way means a property right, and there is not only no reason.to suppose that it means less in this statute, but there is reason for a contrary acceptation. These concessions have in view the earlier settlement of public lands. They are made for the public welfare, and anything less than a complete and permanent grant of a property right would be inconsistent with the objects as well as with the words of the statute. Still more would any uncertain ‘ ‘privilege’ ’ or sufferance be inconsistent with an invitation to expend moneys in constructing railroads. We conceive that it is plain, then, that the right of way conceded under this statute is a right in the most absolute sense; a property right as perfect as that which is acquired by purchase of the soil under the public land laws.
*564 The same principles apply, then, in this case which have been applied by the Supreme Court to patents conveying public lands. They apply, in the first place, in ascertaining the nature aud scope of the Secretary’s action in approving a map of location, and, in the second, in determining whether there is any executive power to interfere after title has vested in the railroad.
In Steel vs. Smelting Company, 106 U. S., 447, (451), the Supreme Court held that the officers of the Rand Department acted as a special tribunal for the decision of all matters which must be decided before issuing a land patent, and that such decisions were, for executive purposes, conclusive. In that case the ground taken was, that a patent was void because it had been obtained by “fraud, bribery, perjury and subordination of perjury.” The court, speaking of the Rand Department, said that: “Necessarily it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation.” It is especially pertinent to the present inquiry that the court held that executive power could not annul action which had caused title to pass, on the ground that it had been obtained by fraud.
In Johnson vs. Towsley, 13 Wall., 73, (85), Mr. Justice Miller, speaking for the court, declared it to be ‘ ‘the general doctrine that when the law confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others. That the action of the Dand Office in issuing a patent for any of the public lands subject to sale, by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated; and in all courts and in all forms of judicial proceedings where this title must control, either by the limited powers of the court or of the essential character *565 of the proceedings, no inquiry can be permitted into the circumstances under which it was obtained.”
According to these decisions, the Secretary of the Interior acts as a special tribunal to determine all the facts which must be considered before he approves a map of location; and in all cases the “qualifications of the applicant” to acquire a right of way — in other words, the fact that it is a railroad within the meaning of the statute, is one of these facts. And according to these same decisions, when an afiimative decision is made and the map of location is approved, the legal ' title to a right of way vests at once by operation of the statute.
We can perceive no difference in this respect between the action of the Rand Department in executing a patent whereby it directly conveys the title and the action of the Secretary whereby the statute is caused to vest title. In both cases title is passed by means of executive determination and action. And it vests, as the Supreme Court has held in the cases referred to, even if executive action be obtained by fraudulent misrepresentation. From that time it must be treated as a legal title. “In all courts, and in all forms of judicial proceedings where this title must control, either by reason of the limited powers of the court or of the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained.” A nulte fortiori must it be conclusive against all subsequent executive inquiry.
If in fact an approval of location is obtained by an applicant not qualified according to the statute to have a right of way, its legal title is undoubtedly liable to annulment; but until annulled it must be regarded as property, and the holder can be deprived of it only by due process of law. It is hardly necessary to demonstrate that, in such matters as this, due process is by judicial proceedings instituted in a court of competent jurisdiction for the purpose of a direct annulment of the title.
It can hardly be maintained that executive power is larger in this case than in the case of a patent, on the ground that *566 an entry of approval of location is merely an office record. It may be an office record, of which only the hand Department shall have custody, but it is not merely that. .The statute makes that record an element of the title; it is thereby one of the muniments of title, and the owner of the right of way has an interest in its existence and preservation. In so far as it is a muniment of title it is subject to no larger executive control or disposal than a patent conveying lands would be.
The question of relief remains to be considered. When a public officer assumes powers over property which do not belong to him, and infringes upon or violates the rights of a citizen under pretense of such assumed authority, equity has jurisdiction to interfere bjr injunction. Kerr on Injunc., Sec. 1309. The annulment of the former approval of complainant’s location must have the effect to impair its peaceful enjoyment of its right of way, and to expose it to trespasses and interruptions.- We conceive that it is not necessary that these interruptions should proceed immediately from the respondent. Apart from such trespasses, the impairment of the complainant’s muniment of title is itself an inj ury which is a proper subject of restraint.
We observe that the answer of Secretary Noble states that complainant’s motion for a rehearing is still pending and and undecided. This may be a suggestion that the respondent cannot now be supposed to threaten to carry out the order complained of; but on the other hand the answer admits the allegations contained in the first seventeen paragraphs of the bill, and one of these is an averment that the respondents are about to carry out that order. Besides, we find the respondent insisting upon his right and duty to do so, and must therefore understand that he will do so unless restrained.

An order for cm inf motion may be prepared according to this opinion.